Sylvester G. Miller v. Commissioner.
Miller v. Commissioner
Docket No. 111238.
United States Tax Court
1943 Tax Ct. Memo LEXIS 188; 2 T.C.M. (CCH) 495; T.C.M. (RIA) 43349; July 21, 1943
*188 Milton R. Schlesinger, Esq., 837 Union Commerce Bldg., Cleveland, O., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $992.70 in 1939 income tax resulting from the disallowance of deductions of amounts paid in settlement of law suits and as a lawyer's fee. Findings of Fact Petitioner, a resident of Toledo, Ohio, filed his 1939 return on a cash basis in the 18th District of Ohio, at Cleveland. From 1929 through 1939 he was engaged in organizing, financing, refinancing and promoting corporations. In 1937 he purchased control of the Morris Plan Bank of Toledo, of which he became and now is president and active head. 1. In or about 1933, he organized Greenlawn Park, a nonprofit corporation for cemetery purposes, and Greenlawn Park, Inc., a corporation for profit to sell the Greenlawn Park cemetery lots on commission. He owned all, and was shareholder of record of 80 per cent of the Greenlawn Park, Inc. shares and the equitable owner of the other 20 per cent held by his father and a friend. He was president and general sales manager. He has not been associated with *189 the cemetery business or Greenlawn Park Cemetery since a receiver was appointed in February, 1936. On or about June 4, 1934, a cemetery lotholder's class suit was brought in Cuyahoga County court against Greenlawn Park and Greenlawn Park, Inc., and a referee was appointed and heard testimony. The petition alleged improper conduct and use of cemetery funds. A receiver was appointed February 15, 1936. A receiver's suit was instituted in June, 1936, against petitioner and others. In August, 1939, petitioner made a written offer in settlement, which was approved by the court in a journal entry, in part as follows: The court finds, further, that Greenlawn Park, Inc. and Greenlawn Park, the Association, were organized and the contract between the two said corporations was drawn by reputable counsel, and in reliance upon the advice of such counsel, Max S. Miller, Sylvester G. Miller and Samuel S. Quittner and others conducted the transactions complained of under a misapprehension of law; that Max S. Miller and Samuel S. Quittner received no part of the proceeds received from the sale of lots in said cemetery as operated prior to the receivership; and that Sylvester G. Miller under the *190 offer of settlement attached hereto and referred to above is restoring to the Receiver the monies which he received under a misapprehension of law. Under the settlement agreement petitioner agreed as follows: to furnish receiver with described cemetery equipment not to exceed $1,000 in value; to provide not to exceed $1,000 for payment of labor required to place the cemetery in condition for burials; to arrange for payment of accrued real estate taxes on the property; to obtain release of a so-called "Meilander claim" against the corporation and the receiver; to have the mortgage modified by extension of the due date and reduction of interest rate from 6 per cent to 4 per cent, and to secure release therefrom of additional parcels for cemetery purposes on payment of $2 per grave, to be applied in reduction of interest and principal on the mortgage; to pay court costs in both suits, receiver's fees, expenses and allowances, and fee allowed by the court for services of attorneys for plaintiffs in both suits; to have lot purchasers repaid from proceeds of future sales of lots. The receiver executed a release in favor of petitioner and all other named defendants and both suits were dismissed. *191 Pursuant to the settlement agreement, petitioner made the following payments in 1939: Charles A. Niman, referee
$ 750.00
O. D. Eshelman, attorney, Zunt suit
2,000.00
Joseph Lustig, receiver's attorney
2,000.00
Alexander, Cochrane & Huffman, for ac-
counting services in both suits
450.00
Clerk of court, costs both suits
150.63
Receiver's fees
1,000.00
Court reporter
235.60
Landscaping work in cemetery
325.72
Tractor for power mower
394.00
Matting and tent for cemetery
120.82
Lowering device and express charges
thereon
96.20
Total
$7,522.97
Petitioner in 1939 paid his own attorneys $1,200 for services in connection with these two suits. 2. In 1935 petitioner organized the National Refunding Corporation. The incorporators, stockholders and directors were petitioner, his secretary and three others. In 1936 petitioner, while president, "entered into negotiations" with E. C. Butler for the purchase of stock in the Morris Plan Bank of Toledo. On January 28, 1937, the corporation, over the signature of petitioner as president, wrote Butler as follows: We hereby acknowledge receipt of statement of the condition of the Toledo Morris Plan Bank, as of January 4, 1937, *192 and in your submission thereto we recognize you exclusively as broker in the event we shall purchase any shares of said bank for the purpose of obtaining control thereof. We will agree to pay a commission to you equivalent to the recognized real estate commission as prescribed by the real estate board in the State of Ohio on a transaction involving this amount of money, it being understood the commission will be paid upon the purchase price of the majority of the stock. From January until June, 1937, Butler was unable to put petitioner in touch with the owner of the shares, or to obtain for him the privilege of examining the bank's assets. In June, petitioner learned the share owner had given exclusive right of sale to his own agent, and petitioner then purchased the shares directly. In October, 1937, Butler sued petitioner and the corporation for $10,000 commissions alleged to be due under the agreement. Petitioner settled this suit by paying Butler $1,500. Opinion STERNHAGEN, Judge: In determining the deficiency, the Commissioner simply said that the amounts paid in the Greenlawn settlements and as legal fees were not allowable deductions, and gave no reason. The evidence *193 shows that as a proximate result of the petitioner's business of earlier years, when he was directly connected with the cemetery corporation and the sales corporation, he became involved in litigation, and that in 1939 he settled the litigation after the court had found that he had received monies "under a misapprehension of law" and that he was offering to make restoration. From the facts in evidence, as distinguished from the allegations of the pleadings in the litigation, there is no reason to treat the settlement in 1939 as implying admission or confirming the aspersions directed at the petitioner's conduct of his earlier business. There is no evidence of improper conduct which would raise the question of whether public policy precludes deduction for the amounts paid in settlement of the civil litigation. Petitioner's misapprehension of law was an incident of his business and his settlement of the law suit was the final step. The payment in 1939, even though it was made after his relation to the business had ceased, was a proximate result of that business and is properly deductible as an ordinary and necessary expense of carrying on that business. See Mertens, Law of Federal *194 Income Taxation, § 25.37. The Commissioner's disallowance of the deduction of $7,935.70 under the settlement agreement and as legal fees is reversed. The amount of $1,500 paid by petitioner in settlement of the Butler suit is not deductible. That payment was a belated payment of commission for the purchase of securities, and is no less so because it was made as a result of litigation. Purchase commissions are not deductible but are part of the cost of the securities purchased. See Mertens, supra, § 25.21. Decision will be entered under Rule 50.